FILED
2026 SEP 14 PM 2:20
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

**JOHNNIE DANIEL BOND SR., individual PRO SE** *Plaintiff,*

**vs.**

**UBER TECHNOLOGIES, INC. and LYFT, INC.,**

*Defendants.*

Case No. {TO BE ADDED} | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF ($150,000,000+)

1:26CV02530 RP

# I. PLAINTIFF STATUS AND BACKGROUND: ELITE STATUS & INDEPENDENT CONTRACTOR STANDING

Plaintiff Johnnie Daniel Bond Sr., a resident of Austin, Travis County, Texas, operated as a high-ranking Uber driver from 2017 to December 2025 and maintained Elite driver status on the Lyft platform before his deactivation. Before Defendants deployed intrusive telematics and automated sensor-based artificial intelligence (AI) monitoring to drivers' personal smartphones, Plaintiff maintained superior performance ratings, including consistent 5-star passenger ratings, positive customer reviews, and high tip volumes across thousands of completed trips.

In addition to his platform experience, Plaintiff has operated as a city-licensed taxi driver for twenty years, maintaining a completely clean driving record with the Texas Department of Public Safety (DPS) devoid of traffic tickets, moving violations, failure-to-yield citations, or driving-under-the-influence (DUI) offenses. In true independent contractor (IC) relationships—such as traditional taxi dispatch models—operators retain complete control over the means and methods of driving, with safety evaluated through objective law enforcement records and official DPS standards rather than uncalibrated smartphone surveillance.

# II. EXHIBIT A: ARBITRARY LYFT DEACTIVATION NOTICE AND LACK OF DUE PROCESS

On September 2, 2026, Defendant Lyft issued an automated electronic deactivation notice to Plaintiff following a prior warning notice on August 24, 2026. The deactivation notice stated: *"After your warning, we received an unsafe driving report about your driving. Because this activity is a breach of our Platform Terms of Service, we had to deactivate your account. This decision is final"*. Defendant Uber similarly deactivated Plaintiff on or before January 2026 under the pretext of alleged "reckless driving".

In both instances, Defendants failed to provide basic evidentiary support or procedural due process.

Defendants failed to provide Plaintiff with a specific Trip ID, timestamp, precise incident location, rider identity, or sworn witness statements. Plaintiff was denied any opportunity to confront accusers—including instances where intoxicated passengers submit false reports—or contest algorithmic telematics flags before an impartial human reviewer. Furthermore, Defendants enforce mandatory arbitration clauses to systematically block drivers from accessing formal judicial proceedings.

## III. DEFAMATION PER SE AND REPUTATIONAL HARM AS AN INJURY

Plaintiff's twenty-year unblemished record with the Texas DPS and official City taxi licensing directly contradicts Defendants' AI-generated findings of unsafe operation. By unilaterally branding Plaintiff as an "unsafe" or "reckless" driver without factual evidence or law enforcement citations, Defendants publish false allegations that impugn Plaintiff's professional integrity and constitute defamation per se.

This defamatory labeling severely harms Plaintiff's professional reputation, destroys commercial business opportunities, restricts future fare-earning capacity across transportation platforms, and impairs Plaintiff's ability to secure commercial vehicle insurance.

## IV. EXHIBIT B: THE WAYMO DOUBLE STANDARD IN ALGORITHMIC EVALUATION

Defendants apply an uncalibrated, zero-tolerance algorithmic standard to human drivers while maintaining a stark double standard for autonomous vehicle technologies such as Waymo. While human independent contractors face permanent deactivation based on a single unverified passenger complaint or telematics anomaly, autonomous vehicles are granted continuous operational leniency despite severe real-world safety failures.

Public safety reports reveal that autonomous driverless systems have undergone mass software recalls involving thousands of construction zones and flooded roadways, hit pedestrians, ran red lights, and prompted federal NHTSA investigations. Despite these safety events, autonomous vehicles receive routine software updates and remain operational on public roads, whereas experienced human drivers with clean state records are permanently stripped of their livelihoods.

## V. VIOLATION OF INDEPENDENT CONTRACTOR LEGAL PRINCIPLES

Defendants' deployment of 24/7 continuous smartphone sensor surveillance violates established statutory and common-law tests for independent contractor status, including California's ABC Test (Dynamex/AB 5), Proposition 22, the *Borello* doctrine, and the Texas common-law right-of-control test:

1. **ABC Test (Dynamex / AB 5):** Prong A requires that an independent contractor be free from the control and direction of the hiring entity in performing the work. By monitoring 24/7 telematics—dictating precise braking force, cornering speed, route choices, and phone handling—Defendants exercise pervasive control over the detailed physical means and methods of driving.
2. **Proposition 22 & Borello / Texas Control Standards:** Proposition 22 protects independent status only when drivers retain genuine autonomy to work across platforms. By imposing intrusive surveillance and unfairly branding drivers as "unsafe," Defendants undermine drivers' ability to secure alternative work. **True independent contractor relationships in transportation rely on objective state driving records, not continuous proprietary surveillance.**

## VI. FORMAL EVIDENTIARY PRESERVATION DEMAND

Plaintiff hereby serves a formal legal demand upon Defendants Uber Technologies, Inc. and Lyft, Inc. to immediately freeze, preserve, and maintain all hardcopy and electronically stored information (ESI) relevant to this litigation. Defendants must preserve:

- Complete historical performance data, including overall 5-star rating counts and percentages, passenger favorite counts, tip totals, and lifetime completed ride counts.
- Full driver tier histories, including Elite and top-ranking driver status records.
- All unredacted passenger safety reports, complaint logs, Trip IDs, GPS coordinates, timestamped sensor logs, and accuser identities.
- Telematics baseline thresholds, AI algorithmic sensitivity rules, human review audit logs, and continuous personal phone surveillance datasets.

## VII. DEMAND FOR IMMEDIATE RELEASE OF WITHHELD EARNINGS & INJUNCTIVE RELIEF

Plaintiff demands the immediate release and payout of all earned funds, including express pay balances and rider fares earned during the five (5) days before deactivation, which Defendants have improperly withheld or suspended. Withholding completed earnings inflicts severe irreparable financial harm on independent contractors who depend on regular deposits for basic living expenses. Human drivers refuse to surrender their livelihoods and operational independence to uncalibrated automated systems.

## VIII. EXHIBIT C: TOLL ROAD COERCION & ROUTE CONTROL AS EMPLOYEE DISCIPLINE

**Pre-Surveillance Operational Autonomy:**

Before Defendants deployed invasive monitoring technologies, Plaintiff exercised legitimate independent-contractor discretion by selecting optimal driving routes. Using two decades of professional driving expertise, Plaintiff frequently bypassed unnecessary toll roads when surface streets offered synchronized traffic signals and clear pathways, matching toll-lane transit times while reducing riders' financial burdens. This level of customized service directly fostered Plaintiff's Elite status, five-star passenger feedback, rider favorite designations, and consistent gratuities.

**Post-Surveillance Micro-Management & Disciplinary Warnings:**

After implementing algorithmic surveillance, Defendant Lyft systematically coerced operators to use toll roads exclusively on every ride. Whenever Plaintiff selected an efficient, non-toll alternative that maintained identical travel duration, Defendant's automated system instantly flagged the vehicle and dispatched micro-managing prompts to Plaintiff's personal phone inquiring, *"Was a road closed?"* Through continuous GPS tracking, Defendant actively policed minor route deviations, stripping Independent Contractor operators of discretionary judgment and improperly exercising employer-like oversight over the detailed physical methods of transit.

EXHIBIT A = Driver Accomplishment Letter (June 9, 2026)-- EXHIBIT B = Deactivation Letter

Respectfully Submitted

Johnnie Daniel Bond Sr.Pro Se
bondjohnnie@gmail.com
512-552-8688